## Lorraine Lowery vs. Francis Klemm.

Barnstable. February 8, 2006. - April 21, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Employment,* Sexual harassment, Volunteer worker. *Statute,* Construction.

Discussion of the statutory scheme concerning sexual harassment. [574-576]

In a civil action brought by a volunteer alleging sexual harassment by a former coworker in violation of G. L. c. 214, § 1C, a Superior Court judge properly granted summary judgment in favor of the defendant, where G. L. c. 214, § 1C, applies only to conduct occurring in an employment or academic environment, and does not provide a statutory cause of action to volunteers, although volunteers retain their common-law rights regarding sexual harassment. [576-581]

Civil action commenced in the Superior Court Department on May 31, 2002.

The case was heard by *David A. McLaughlin,* J., on a motion for summary judgment.

After review by the Appeals Court, 63 Mass. App. Ct. 307 (2005), the Supreme Judicial Court granted leave to obtain further appellate review.

*Lee M. Berger* for the defendant.

*Kevin M. Orme* for the plaintiff.

Spina, J. This case presents an issue of statutory interpretation: whether G. L. c. 214, § 1C, which states that "[a] person shall have the right to be free from sexual harassment, as defined in" G. L. c. 151B and c. 151C, applies to volunteers. The plaintiff, a volunteer, brought an action alleging sexual harassment by a former coworker. A judge in the Superior Court granted summary judgment for the defendant because the alleged conduct did not occur in an employment or academic context. The Appeals Court determined that G. L. c. 214, § 1C, creates a cause of action for volunteers and reversed the order. *Lowery* v. *Klemm,* 63 Mass. App. Ct. 307 (2005). We granted

the defendant's application for further appellate review, and we hold that G. L. c. 214, § 1C, does not apply to volunteers, although volunteers retain their common-law rights regarding sexual harassment. We therefore affirm the order of summary judgment in favor of the defendant.

1. *Background.* When reviewing a grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The plaintiff volunteered her time at a "swap shop," operated by the town of Falmouth (town) at its waste management facility. The defendant worked as the gatekeeper and land supervisor at the same facility. He frequently visited the shop and made sexual advances toward the plaintiff for three years, despite her repeated requests that he leave her alone. The town ultimately terminated the plaintiff's volunteer services and issued a no-trespass order, barring her from the facility.

The plaintiff filed a one-count complaint in the Superior Court, alleging that the defendant had harassed her sexually in violation of G. L. c. 214, § 1C.[1] The defendant filed a motion for summary judgment, arguing that the plaintiff had failed to state a claim on which relief could be based because she was not an employee. The judge granted summary judgment for the defendant, reasoning that G. L. c. 214, § 1C, incorporates definitions of "sexual harassment" from G. L. c. 151B and c. 151C, which require that the conduct occur in an employment or academic environment.[2]

The Appeals Court, however, concluded that G. L. c. 214,

[1]General Laws c. 214, § 1C, provides: "A person shall have the right to be free from sexual harassment, as defined in chapter[s 151B and 151C]. The superior court shall have the jurisdiction to enforce this right and to award the damages and other relief provided in the third paragraph of section 9 of chapter 151B. Any such action shall be commenced in the superior court within the time allowed by said section 9 of said chapter 151B. No claim under this section that is also actionable under chapter 151B or chapter 151C shall be brought in superior court unless a complaint was timely filed with the Massachusetts commission against discrimination under said chapter 151B."

[2]The definition of "sexual harassment" in G. L. c. 151B appears in § 1 (18): "The term 'sexual harassment' shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either

§ 1C, applies to volunteers and reversed the order. *Lowery* v. *Klemm*, 63 Mass. App. Ct. 307, 308 (2005). The court discerned "a legislative intent comprehensively and broadly to reach sexual harassment wherever occurring, including in nontraditional employment structures." *Id.* at 312. The court further noted that the statute's broad language, which grants "[a]ll 'persons' " the right to be free from sexual harassment, and its codification in G. L. c. 214, which confers equity jurisdiction, suggest a statutory reach broad enough to encompass volunteers. *Id.* at 313-314. Finally, as a matter of public policy, the Appeals Court observed that an interpretation of G. L. c. 214, § 1C, that did not protect volunteers would create unfair and absurd results: volunteer workers could be subject to the same sexual harassment as paid employees, but would lack the statutory remedies afforded them. *Id.* at 314-315.

2. *Discussion.* In 1986, the Legislature passed "An Act prohibiting sexual harassment," St. 1986, c. 588, which added a definition of sexual harassment to G. L. c. 151B, § 1 (18), and declared it an "unlawful practice" for an employer or its agents "to sexually harass any employee," G. L. c. 151B, § 4 (16A). See *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 553 (1996) (discussing enactment of St. 1986, c. 588). It also amended G. L. c. 151C to include a definition of sexual harassment, see G. L. c. 151C, § 1 (*e*), and made it "an unfair educational practice . . . [t]o sexually harass students in any program or course of study in any educational institution," G. L. c. 151C,

explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (*b*) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment."

The definition of sexual harassment in G. L. c. 151C, § 1 (*e*), provides: "The term 'sexual harassment' means any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:— (i) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of the provision of the benefits, privileges or placement services or as a basis for the evaluation of academic achievement; or (ii) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment."

§ 2 (*g*). In addition, this legislation created G. L. c. 214, § 1C, which provides that "[a] person shall have the right to be free from sexual harassment, as defined in" G. L. c. 151B and c. 151C, and grants the Superior Court jurisdiction to adjudicate such claims. See *Green* v. *Wyman-Gordon Co., supra* at 553, 554.

General Laws c. 151B provides a remedy for sexual harassment involving employers with six or more employees.[3] *Guzman* v. *Lowinger*, 422 Mass. 570, 572 (1996). *Green* v. *Wyman-Gordon Co., supra* at 559. Plaintiffs alleging sexual harassment in this environment must comply with the procedural requirements of G. L. c. 151B, § 5, by filing a complaint with the Massachusetts Commission Against Discrimination (MCAD) within the statutory time limit.[4] Although the "broad exclusivity provision" of G. L. c. 151B, § 9, precludes plaintiffs from "recasting" their claims of sexual harassment as common-law claims or violations of other statutes, it permits recovery of actual and punitive damages (as well as reasonable attorney's fees and costs). See *Green* v. *Wyman-Gordon Co., supra* at 555 (employee's statutory claims alleging violations of civil rights act and equal rights act, and common-law claims for negligence, breach of contract, and intentional and negligent infliction of emotional distress, barred by exclusivity provisions of G. L. c. 151B and workers' compensation act). See *Doe* v. *Purity Supreme, Inc.*, 422 Mass. 563, 565-567 (1996) (employee's common-law claims for negligence, assault and battery, and intentional and negligent infliction of emotional distress barred by exclusivity provision of workers' compensation act; statutory claims barred by exclusivity provision of G. L. c. 151B).

General Laws c. 214, § 1C, supplements G. L. c. 151B by ensuring "that *all* employees are protected against sexual harass-

[3]General Laws c. 151B, § 1 (5), excludes "any employer with fewer than six persons in his employ" from the ambit of c. 151B.

[4]General Laws c. 151B, § 9, allows a plaintiff to "bring a civil action for damages or injunctive relief or both in the superior or probate court," but the plaintiff must wait until ninety days after filing a complaint with the Massachusetts Commission Against Discrimination (MCAD), unless the commissioner assents in writing. Any complaint pending before the commission at that time will be dismissed, and the plaintiff may not bring the same matter before the MCAD again.

ment in the workplace, whether or not their employers fit within the definition in c. 151B" (emphasis in original). *Green* v. *Wyman-Gordon Co., supra* at 557. General Laws c. 214, § 1C, thus extends statutory protection from sexual harassment to employees of employers with fewer than six workers. *Id.* Like G. L. c. 151B, when G. L. c. 214, § 1C, applies to a claim of sexual harassment, it is the exclusive remedy: plaintiffs may not proceed with other statutory or common-law actions for sexual harassment. See *Guzman* v. *Lowinger, supra* at 572 ("Just as G. L. c. 151B provides an exclusive remedy for sexual harassment claims against employers with six or more employees, G. L. c. 214, § 1C, provides the exclusive remedy for such claims against employers of fewer than six employees").

The defendant contends that G. L. c. 214, § 1C, incorporates the entire definition of sexual harassment contained in G. L. c. 151B, § 1 (18), and G. L. c. 151C, § 1 (*e*), and that it therefore provides statutory protection only from sexual harassment that affects a person's employment or education. The defendant emphasizes that victims of sexual harassment in other contexts are not without remedy: unlike employees and students, they may pursue common-law claims against alleged offenders. The plaintiff, however, urges us to adopt an interpretation of G. L. c. 214, § 1C, that is not limited to employment and academic settings, because it grants the right to be free from sexual harassment to "a person," not "an employee" or "a student." The plaintiff claims that the Legislature intended to incorporate into G. L. c. 214, § 1C, only the part of the definition of sexual harassment that appears in both G. L. c. 151B and c. 151C: "The term 'sexual harassment' shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature," without any reference to an employment or academic environment. The plaintiff further argues that the Legislature already has addressed the issue of sexual harassment in the workplace and academia, and that limiting the scope of G. L. c. 214, § 1C, to those environments would, leave it "entirely duplicative" of G. L. c. 151B and c. 151C.[5]

"The general and familiar rule is that a statute must be

[5]The plaintiff does not argue that her claim is cognizable under G. L.

interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). "[T]he primary source of insight into the intent of the Legislature is the language of the statute." *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983). We therefore begin with the plain language of G. L. c. 214, § 1C: "A person shall have the right to be free from sexual harassment, as defined in chapter[s 151B and 151C]." Although we agree with the plaintiff that "person" is a broad term, the definitions of sexual harassment in G. L. c. 151B and c. 151C, expressly incorporated into G. L. c. 214, § 1C, limit the reach of that statute: these provisions define as "sexual harassment" only conduct that affects "a term or condition of employment" or serves as "a basis for employment decisions," G. L. c. 151B, § 1 (18) (*a*); creates "an intimidating, hostile, humiliating or sexually offensive work environment," G. L. c. 151B, § 1 (18) (*b*); functions as "a basis for the evaluation of academic achievement" or otherwise affects academic placement or privileges, G. L. c. 151C, § 1 (*e*) (i); or creates "an intimidating, hostile, humiliating or sexually offensive educational environment," G. L. c. 151C, § 1 (*e*) (ii).

A statute must be interpreted to give effect "to all its provisions, so that no part will be inoperative or superfluous." *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998), quoting 2A B. Singer, Sutherland Statutory Construction § 46.06 (5th ed. 1992). The plaintiff's interpretation of G. L. c. 214, § 1C, would require us to ignore much of the definition of "sexual harassment" provided in G. L. c. 151B and c. 151C. We agree with the defendant that, had the Legislature intended to incorporate only part of these definitions, it would have done so explicitly. Cf. *Vicarelli* v. *Business*

c. 214, § 1C, because she was harassed in a "work environment," within the meaning of G. L. c. 151B, § 1 (18). The plaintiff argues only that G. L. c. 214, § 1C, provides a cause of action for sexual harassment in any environment. However, even if the plaintiff had advanced such an argument, we still would affirm the decision of the Superior Court, for the reasons explained above.

*Int'l, Inc.*, 973 F. Supp. 241, 245 (D. Mass. 1997) ("The Legislature could have provided a broader definition for sexual harassment in [G. L. c.] 214, § 1C, or it could have enacted provisions that would have explicitly protected [volunteers] from sexual harassment"). We accordingly construe G. L. c. 214, § 1C, to incorporate the complete definitions of "sexual harassment" found in G. L. c. 151B, § 1 (18), and G. L. c. 151C, § 1 (*e*), which limit statutory protection to conduct occurring in the employment and academic contexts.[6]

Contrary to the plaintiff's contention, our interpretation of G. L. c. 214, § 1C, does not render that statute duplicative of G. L. c. 151B and c. 151C. General Laws c. 214, § 1C, fills a gap in the statutory scheme by creating a cause of action for sexual harassment for employees who are not protected by G. L. c. 151B. *Guzman* v. *Lowinger*, 422 Mass. 570, 572-573 (1996). It also "provides exclusive jurisdiction in the Superior Court for any sexual harassment claim that is brought in the courts because . . . the employer is not covered by c. 151B." *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 557 (1996). In addition, the statute gives students who are sexually harassed in violation of G. L. c. 151C, § 2 (*g*), access to the remedial provisions of G. L. c. 151B, § 9. See *Morrison* v. *Northern Essex Community College*, 56 Mass App. Ct. 784, 786 n.6 (2002). General Laws c. 214, § 1C, thus extends to employees and students protection that is not otherwise available under G. L. c. 151B and c. 151C; it does not duplicate the relief provided by those statutes.[7]

Moreover, we will not adopt a construction of a statute that

---

[6]Although his decision is not binding on this court, a Federal trial judge reached a similar conclusion concerning the scope of G. L. c. 214, § 1C. See *Vicarelli* v. *Business Int'l, Inc.*, 973 F. Supp. 241, 245 (D. Mass. 1997). He reasoned, as we do today, that the Legislature's incorporation of the definitions of sexual harassment in G. L. c. 151B and c. 151C "strongly suggests an intention to restrict the meaning of the term 'person' in [G. L. c.] 214, § 1C to a 'person' either in the employment context or a person in the educational context," and ultimately concluded that the statute would not apply to independent contractors because they are "outside the traditional employer-employee framework." *Id.*

[7]We also reject the plaintiff's argument that incorporating the complete definitions of "sexual harassment" from G. L. c. 151B, § 1 (18), and G. L. c. 151C, § 1 (*e*), would require a plaintiff to satisfy both definitions simultaneously, by demonstrating that the alleged conduct affected the

creates "absurd or unreasonable" consequences. *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982). The plaintiff's interpretation of G. L. c. 214, § 1C, would result in a statutory scheme that gives volunteers greater rights than employees. The workers' compensation statute, G. L. c. 152, precludes employees from bringing common-law actions for personal injuries, including emotional harm, arising "out of and in the course of . . . employment." See *Foley* v. *Polaroid Corp.*, 381 Mass. 545, 548-550 (1980), quoting G. L. c. 152, § 26.[8] While the exclusivity provisions of G. L. c. 151B, § 9, and G. L. c. 214, § 1C, prohibit plaintiffs from framing sexual harassment as a violation of another statute, or as a common-law claim, the workers' compensation statute bars employees' claims for other injuries related to workplace sexual harassment.[9] See *Doe* v. *Purity Supreme, Inc.*, 422 Mass. 563 (1996); *Green* v. *Wyman-Gordon Co.*, *supra* at 558 ("common law claims not

---

petitioner's employment *and* education. Nothing in the statutory language suggests that conduct must occur in both environments at the same time to be actionable as sexual harassment, and we have never interpreted the statute in such a manner. See *Guzman* v. *Lowinger*, 422 Mass. 570, 572 (1996) (noting that G. L. c. 214, § 1C, "permits employees" to bring suit for "sexual harassment in employment," without mentioning any requirement of an academic nexus). General Laws c. 214, § 1C, simply provides two alternative definitions of sexual harassment.

[8]General Laws c. 152, § 24, the exclusivity provision of the workers' compensation statute, provides in relevant part: "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right . . . ."

General Laws c. 152, § 26, explains when injuries are compensable: "If an employee who has not given notice of his claims of common law rights of action under section twenty-four . . . receives a personal injury arising out of and in the course of his employment . . . he shall be paid compensation by the insurer or self-insurer, as hereinafter provided . . . ."

[9]The definition of "employer" in G. L. c. 152, unlike the definition in c. 151B, is not limited to those with six or more employees. See G. L. c. 152, § 1 (5) (defining "[e]mployer" as "an individual, partnership, association, corporation, or other legal entity . . . employing employees subject to this chapter"); G. L. c. 152, § 1 (4) (defining "[e]mployee" as "every person in the service of another under any contract of hire" with certain exceptions not relevant here). Thus, the workers' compensation statute prevents any employee from pursuing claims for injuries related to workplace sexual harassment, whether actionable under G. L. c. 151B, § 9, or G. L. c. 214, § 1C.

barred by c. 151B, notably the claims for intentional and negligent infliction of emotional distress, are barred by the exclusivity provision of the workers' compensation act"). Because the workers' compensation statute does not apply to volunteers, however, their common-law claims relating to sexual harassment are not similarly barred. See *Vicarelli* v. *Business Int'l, Inc.*, 973 F. Supp. 241, 245-246 (D. Mass. 1997) (granting motion to dismiss sexual harassment claim under G. L. c. 214, § 1C, because statute does not apply to independent contractors, but denying motion to dismiss claims for intentional and negligent infliction of emotional distress). If we were to conclude that G. L. c. 214, § 1C, covered volunteers, then volunteers could pursue common-law claims for injuries related to sexual harassment as well as claims under G. L. c. 214, § 1C, whereas employees would be limited to statutory claims under G. L. c. 151B or G. L. c. 214, § 1C. The plaintiff does not argue that the Legislature intended to give volunteers more rights and remedies than employees, and we see nothing in the statute itself, its legislative history, or our cases to support such an outcome.

The plaintiff's proposed interpretation of G. L. c. 214, § 1C, also would have the peculiar effect of making it more difficult for employees to prove sexual harassment than nonemployees. An employee alleging sexual harassment would be required to demonstrate that (1) a defendant made sexual advances, requested sexual favors, or engaged in other conduct of a sexual nature; and that (2) the employee's submission to this conduct was a term of employment or the basis of employment decisions; or that (3) this conduct created a hostile work environment. See G. L. c. 151B, § 1 (18). If only the first part of the definition of sexual harassment contained in G. L. c. 151B, § 1 (18), is incorporated into G. L. c. 214, § 1C, however, nonemployees like the plaintiff would have to prove merely that the defendant made sexual advances, requested sexual favors, or engaged in other conduct of a sexual nature to establish their claim.[10] Given the emphasis on the problem of workplace sexual harassment in

---

[10]The plaintiff's interpretation thus would have the unreasonable or absurd result of making all sexual advances actionable as sexual harassment, regardless of the circumstances or the effect of the conduct. We agree with the

the over-all statutory scheme, we do not believe that the Legislature intended to make it more difficult for employees — one of the groups singled out for protection when the statutory prohibition on sexual harassment was first enacted — to bring such claims. See *Guzman* v. *Lowinger, supra* at 573; *Green* v. *Wyman-Gordon Co., supra* at 553.

Finally, we emphasize that volunteers, like the plaintiff, who experience sexual harassment are not without recourse: although not protected by G. L. c. 214, § 1C, they may bring actions under other statutes, including the civil rights act, G. L. c. 12, § 11I, as well as common-law claims for sexual harassment or related injuries that would be barred for employees by the exclusivity provisions of G. L. c. 151B, § 9; G. L. c. 214C, § 1C; and the workers' compensation statute. Because volunteers retain these common-law rights and remedies, our decision today does not leave employers free to sexually harass volunteers with impunity. It may be, as the Appeals Court noted, that volunteers do not enjoy protection as extensive as that granted to students and employees. See *Lowery* v. *Klemm*, 63 Mass. App. Ct. 307, 314-315 & n.7 (2005) (noting that G. L. c. 151B, § 9, and G. L. c. 214, § 1C, "provide greater protections and grant a broader array of remedies and tools for enforcement than are available at common law"). However, this reflects a legislative policy judgment, and "[t]hat public policy is entitled to deference . . . . Whether a statute is wise or effective is not within the province of courts." *Commonwealth* v. *Leno*, 415 Mass. 835, 841 (1993), citing *Commonwealth* v. *Lammi*, 386 Mass. 299, 300 (1982). The Legislature may have considered that employees, who generally depend on their jobs for their livelihood, need greater protection from sexual harassment than volunteers, who are uncompensated and therefore more free to leave an uncomfortable workplace environment.

*3. Conclusion.* For the foregoing reasons, we agree with the Superior Court judge's ruling that G. L. c. 214, § 1C, applies only in the employment and academic contexts, and does not provide a statutory cause of action to volunteers. "An order granting or denying summary judgment will be upheld if the

---

defendant that this broad construction would be unworkable and inconsistent with legislative intent.

trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992), citing *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). Because we conclude that the judge ruled correctly as a matter of law, and no disputed issue of material fact exists, we affirm the judgment of the Superior Court.[11]

*So ordered.*

---

[11]Although we affirm the order of summary judgment in favor of the defendant, there is no merit to the defendant's claim that this appeal is frivolous.